B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS** <br> Brian J. Magras | **DEFENDANTS** <br> Bangor Savings Bank |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) <br> Jacob T. Simon, Seven Franklin St, Lynn, MA 01902 <br> (617) 819-4183 (p) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) <br> ☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor ☐ Other <br> ☐ Trustee | **PARTY** (Check One Box Only) <br> ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin <br> ☒ Creditor ☐ Other <br> ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Discharge injunction violations 11 U.S.C. 524, Automatic stay violations 11 U.S.C. 362, Contempt 11 U.S.C. 105

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ 100,000 |

**Other Relief Sought** Actual damages, statutory damages, consequential damages, punitive damages, attorney's fees and costs.

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Brian J. Magras | BANKRUPTCY CASE NO.<br>17-11833-JEB | | |
| DISTRICT IN WHICH CASE IS PENDING<br>Massachusetts | DIVISION OFFICE<br>Eastern | | NAME OF JUDGE<br>Hon. Janet E. Bostwick |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*[signature]* | | | |
| DATE<br>April 21, 2020 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jacob T. Simon | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATE BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BRIAN J. MAGRAS,<br><br>    Debtor. | Chapter 7<br>Case No. 17-11833-JEB |
| BRIAN J. MAGRAS,<br><br>    Plaintiff,<br><br>v.<br><br>BANGOR SAVINGS BANK,<br><br>    Defendant. | Adv. Pro. No. |

**VERIFIED COMPLAINT**

**Preliminary Statement**

Bangor Savings Bank has charged the Debtor **$13,079.10 in attorney's fees** for a reaffirmation agreement on his home. Bangor Savings Bank is an abusive creditor, using coercive tactics, to force a bankrupt individual to pay for its own lawyers. A reaffirmation agreement may not be the product of abusive creditor practices. In re Jamo, 283 F.3d 392, 398 (1st Cir. 2002).

Brian J. Magras (herein "Mr. Magras" or in the alternative, "Plaintiff") is the debtor in the above-captioned chapter 7 bankruptcy case. Mr. Magras, by and through the undersigned counsel, respectfully requests that this Honorable Court hold Bangor Savings Bank (herein "BSB" or the alternative, "Defendant") in contempt and to impose harsh sanctions upon BSB for its continuous, egregious, and ongoing collection efforts.

1 of 10

## PARTIES

1. Mr. Magras is a natural person who currently resides at the property located at 116 Blue Road, Monmouth, ME 04259 (herein "Property").

2. BSB is a savings bank with a headquarters located at 3 State Street, Bangor, Maine 04401.

## FACTS

3. Mr. Magras is the current co-owner of the Property, along with his mother, Donna Magras.

4. On May 17, 2017, Mr. Magras filed for chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Massachusetts, case #17-11833.

5. On schedule A/B, Mr. Magras listed an interest in the Property, along with his mother, Donna Magras, with a value of $120,000.00. A true and accurate copy of the schedule A is attached hereto as Exhibit A.

6. On schedule C, Mr. Magras listed the Property exempt in the amount of "100% fair market value, up to to any applicable statutory limit" pursuant to 11 U.S.C. § 522(d)(5). A true and accurate copy of schedule C is attached hereto as Exhibit B.

7. On schedule(s) I and J, Mr. Magras listed a monthly net income of -$2,009.00. Consequently, BSB should have reasonably known on March 17, 2017 that a reaffirmation agreement with the Mr. Magras was not feasible and would be denied. A true and accurate copy of schedule(s) I and J are attached hereto as Exhibit C.

8. On schedule D, Mr. Magras listed a mortgage in favor of BSB in the amount of $115,946.44. A true and accurate copy of the schedule D is attached hereto as Exhibit D.

9. On the statement of intention, Mr. Magras indicated an intent to "[r]etain the [p]roperty and "...keep making payments." A true and accurate copy of the statement of intention is attached hereto as Exhibit E.

10. At some point thereafter, Mr. Magras and BSB (herein "Parties") discussed a mortgage reaffirmation.

11. On October 6, 2017, after three agreed-upon extensions[1], BSB filed the reaffirmation agreement (herein "Reaffirmation"). The Reaffirmation contained the following disclosures (in part:

- BSB knew that the underlying debt was dischargeable. See Cover Sheet for Reaffirmation Agreement, Part 1, Number 5.

- BSB knew that Mr. Magras's present net monthly income was -$2,009.00. See Cover Sheet for Reaffirmation Agreement, Part I, Number 6h.

- That the financial instrument to be reaffirmed was the "Mortgage loan". See Reaffirmation Agreement, Part I (A).

- Under "[d]escribe repayment terms, including whether future payment amount(s) may be different from the initial payment amount" the Parties agreed that "[p]ayments of principal and interest are currently $712.26. This is an Adjustable Rate Note and the interest may change on the first day of August of each year." See Reaffirmation Agreement, Part I (D).

- Mr. Magras checked the box next to: "You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses that monthly payment on all debts you are reaffirming, including this one, because:" See Reaffirmation Agreement, Part II (C) (2).

---
[1] The agreed upon extensions included an extension of time for BSB to object to Debtor's discharge.

- Mr. Magras did not provide an explanation regarding the above statement. Id.
- Mr. Magras was advised by counsel regarding the Reaffirmation.

A true and accurate copy of the reaffirmation agreement is attached hereto as Exhibit F.

12. BSB never sought approval of attorney's fees in connection with the mortgage reaffirmation.

13. BSB never sought approval of attorney's fees in connection with the bankruptcy proceeding.

14. On October 31, 2017, the Court denied the Reaffirmation. A true and accurate copy of the order denying the Reaffirmation is attached hereto as Exhibit G.

15. On November 28, 2017, Mr. Magras received his discharge from chapter 7 bankruptcy. A true and accurate copy of the order of discharge is attached hereto as Exhibit H.

16. On November 30, 2017, the Bankruptcy Noticing Center filed a certificate of notice of discharge, which included BSB via electronic mail. A true and accurate copy of the certificate is attached hereto as Exhibit I.

17. On or about December of 2017, Mr. Magras received a mortgage statement from BSB dated December 17, 2017 for his mortgage account #1682. This statement set forth a due date of January 1, 2018 for the "TOTAL AMOUNT DUE" of $9,403.36, including, a "past due amount" of $1,055.00 and "Total Fees and Charges" of $7,636.10. A true and accurate copy of this statement is attached hereto as Exhibit J.

18. Mr. Magras understood that the bank had established a deadline of January 1, 2018 to personally pay the sum of $9,403.36.

19. The next month Mr. Magras received a mortgage statement from BSB dated January 16, 2018 for his mortgage account #1682. This statement set forth a due date of February 1, 2018 for

the "TOTAL AMOUNT DUE" of $10,107.36, including, a "past due amount" of $8,691.10. A true and accurate copy of this statement is attached hereto as Exhibit K.

20. Mr. Magras understood that the bank had established a deadline of February 1, 2018 to personally pay the sum of $10,107.36.

21. Mr. Magras has received substantially similar statements up to the present date. Eventually, after the undersigned counsel reached out on Debtor's behalf, BSB amended the monthly statements to add so-called "limiting language" regarding personal debt liability after bankruptcy.

22. BSB confirmed to Debtor's counsel that BSB "added approximately $8,000 to [Debtor's] mortgage," and "[t]hat amount must be paid before the lien is discharged." A true and accurate copy of the relevant writing is attached hereto as Exhibit L.

23. Each and every month Mr. Magras receives a mortgage statement from BSB with an ever-increasing (and as of yet, still unaccounted for) past due amount. Mr. Magras believes that he must personally pay for the past due amounts.

24. Mr. Magras's loan was current when the bankruptcy was filed.

25. Mr. Magras's loan remains current.

26. As of the time of this writing BSB has provided no accounting for the past amount due.

27. Mr. Magras is distressed and confused because he believes that BSB is coercing him into paying a large sum of money that he does not understand.

28. On or about March 15, 2019 the undersigned served a demand letter (herein "93A Letter") upon BSB pursuant to M.G.L. ch. 93A. A true and accurate copy of the 93A Letter is attached hereto as Exhibit M.

29. On or about April 26, 2019 (after an extension) BSB responded to the 93A Letter. A true and accurate copy of the 93A Letter is attached hereto as Exhibit N.

30. Amazingly, an examination of Mr. Magras's mortgage statement dated May 16, 2019 reveals that BSB actually charged him for <u>their own attorney's fees in responding to the 93A Letter</u>. A true and accurate copy of this statement is attached hereto as <u>Exhibit O</u>.

31. Mr. Magras is distressed and confused because he believes that BSB is coercing him into paying their additional attorney's fees for their 93A Letter response.

32. As stated, the aforementioned "past due amount" has ballooned to approximately $13,079.10. BSB has furiously denied wrongdoing, has refused to remove their unlawful and illegal charges <u>for their own attorney's fees</u> from Debtor's account, and has refused to cease their collection activities.

33. Even if the fees incurred are reasonable (which they are not) any change in payment amount pursuant to the Reaffirmation and 93A Letter can be made only upon adequate notice. BSB never noticed Mr. Magras of these charges related to the Reaffirmation or the 93A Letter.

PRAYERS FOR RELIEF

**COUNT I**

*VIOLATION OF THE DISCHARGE INJUNCTION - 11 U.S.C. § 524*

34. Mr. Magras repeats and re-alleges all paragraphs above as set forth fully herein.

35. BSB knew about the bankruptcy discharge at the time that they charged him with their own legal fees relating to a simple reaffirmation agreement.

36. BSB violated the discharge provision of 11 U.S.C. § 524 by notifying a title 11 debtor of the potential for personal liability after a discharge was ordered.

37. BSB violated the discharge provision of 11 U.S.C. § 524 by acting to collect a discharged debt from a title 11 debtor.

38. BSB violated the discharge provision of 11 U.S.C. § 524 by coercing a title 11 debtor into paying a discharged debt after the discharge was ordered.

39. BSB's claims for payment may appear on their face to be *in rem*, however, BSB's actions were (and are) an act to collect a debt personally from Mr. Magras.

40. Negotiating a reaffirmation agreement is a ministerial task. Even if a creditor's attorney is involved it should not take 52.32 billable hours ($13,079.10/$250 per hour) to do so.

41. In In re Porter, the Court noted regarding reaffirmation agreements that "[a]ll of the activity prior to the preparation of the Agreement consisted of reviewing the bankruptcy filing and performing a financial analysis of the Debtors' ability to pay the debt going forward. Such activities do not require specialized legal knowledge. Rather they are the very activities that any creditor should do upon receipt of a notice of a bankruptcy filing, as part of the ordinary administration of a loan." In re Porter, 399 B.R. 113 (Bankr. N.H. 2008).

42. BSB's act of effectively holding Mr. Magras hostage by not allowing him to sell or refinance without paying their baseless and exorbitant fees is coercive and designed to cause Mr. Magras to pay the debt.

43. Because of BSB's continuous and ongoing collection efforts Mr. Magras has suffered and continue to suffer from severe anxiety, extreme stress, humiliation, anger, emotional distress, fear, frustration, embarrassment, and hopelessness that BSB will never stop taking money even though he filed (and was successfully discharged from) bankruptcy.

44. As a result of the unlawful actions of BSB, Mr. Magras has been forced to incur services of counsel.

## COUNT II

*VIOLATION OF THE AUTOMATIC STAY - 11 U.S.C. § 362*

45. Mr. Magras repeats and re-alleges all paragraphs above as set forth fully herein.

46. BSB had notice of the bankruptcy filing at the time that they charged him with their own legal fees relating to a simple reaffirmation agreement.

47. BSB violated 11 U.S.C. § 362 by levying its own legal fees against Mr. Magras prior to discharge.

48. BSB never sought, and were never approved, to collect attorney's fees from Mr. Magras.

49. BSB violated 11 U.S.C. § 362 by "ringing up" attorney's fees while on notice that a reaffirmation agreement with the Debtor was not reasonable.

50. Because of BSB's pre-discharge collection efforts Mr. Magras has suffered and continue to suffer from severe anxiety, extreme stress, humiliation, anger, emotional distress, fear, frustration, embarrassment, and hopelessness that BSB will never stop taking money even though he filed (and was successfully discharged from) bankruptcy.

51. As a result of the unlawful actions of BSB, Mr. Magras has been forced to incur services of counsel.

### COUNT III

*ABUSIVE CREDITOR PRACTICES - 11 U.S.C. § 105*

52. Mr. Magras repeats and re-alleges all paragraphs above as set forth fully herein.

53. BSB's collection of $13,079.10 against the Debtor to offset its own legal fees is unreasonable.

54. Congress has given bankruptcy courts the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." In re Oak Knoll Assocs., L.P., 835 F.3d 24, 34 (1st Cir. 2016) (quoting 11 U.S.C. § 105(a)).

55. The Bankruptcy Court has an absolute right to monitor and sanction abusive creditor practices.

WHEREFORE, Mr. Magras respectfully requests that this Honorable Court:

1. Exercise jurisdiction over this matter;

2. Enter judgment and grant relief declaring that the actions of BSB following notice of the bankruptcy discharge violated 11 U.S.C. § 524;

3. Enter judgment and grant relief declaring that the actions of BSB following notice of the bankruptcy case violated 11 U.S.C. § 362;

4. Enter judgment and grant relief declaring that the actions of BSB were abusive as to award relief under 11 U.S.C. § 105;

5. Award Mr. Magras actual, consequential, and punitive damages, in an amount to be determined a trial;

6. Award Mr. Magras his attorney's fees; and

7. Grant any other relief as is deemed just and proper.

**Plaintiff requests a trial by jury on all issues so triable.**

Respectfully submitted,
BRIAN J. MAGRAS,
By counsel,

_____
Jacob T. Simon, Esq.
BBO# 673613
Simon Law
Seven Franklin Street
Lynn, MA 01902
(617) 819-4183 (p)
(617) 765-7262 (f)
jacob@simonlawma.com

## VERIFICATION OF COMPLAINT

I, Brian Magras, Plaintiff in the above-captioned action, hereby depose and state that I have read the foregoing verified complaint, and the facts set forth herein are based on my own personal knowledge and are true and correct to the best of my knowledge and recollection.

Signed under the pains and penalties of perjury on this ___26___ day of February, 2020.


_____
Brian Magras