## UNITED STATE BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRIAN J. MAGRAS,  Debtor. | Chapter 7  Case No. 17-11833-JEB |
| BRIAN J. MAGRAS,  Plaintiff,  v.  BANGOR SAVINGS BANK,  Defendant. | Adv. Pro. No. 20-01054-JEB |

### RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Brian J. Magras (herein "Plaintiff") hereby submits the following response to the motion of Bangor Savings Bank (herein "BSB" or "Defendant") to dismiss ("Motion to Dismiss"). In support Plaintiff states as follows.

The Verified Complaint plausibly asserts that there have been violations of the "discharge injunction" provided in § 524 and the "automatic stay" under § 362 of the Bankruptcy Code. These violations arise out of the Defendant sending Plaintiff statements demanding immediate payment for unjustified and unaccounted for sums at the time when Plaintiff's underlying personal obligation to make payment was discharged in bankruptcy. To be sure, BSB has admitted to sending demands for payment to Plaintiff post-discharge. Ten (10) separate demands for past due payments contained no "limiting language" or typical bankruptcy disclaimers. Furthermore, BSB provided Plaintiff no notice of what the past due amounts were for or how they were calculated. The Court should find that, contrary to BSB's request to dismiss for failure to state a claim, BSB has actually demonstrated that they did attempt to collect a discharged debt after notice of the chapter 7 bankruptcy filing. The Court,

1

after ordering sufficient time for discovery, should then decide the issue of whether to redress violations pursuant to its "statutory contempt powers" under 11 U.S.C. § 105(a), which "inherently include the ability to sanction a party." Ameriquest Mortgage Co. v. Nosek, (In re Nosek), 544 F.3d 34, 43-44 (1st Cir. 2008). See In re Canning, 706 F.3d at 69; In re Pratt, 462 F.3d at 17; U.S. v. Rivera Torres, (In re Rivera Torres), 432 F.3d 20, 23 (1st Cir. 2005).

The discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset [a discharged debt] as a personal liability of the debtor . . ." 11 U.S.C. § 524(a)(2). The purpose of the discharge injunction is to afford "honest but unfortunate debtors with a 'fresh start' from the burdens of personal liability for unsecured prepetition debts and thus advances the overarching purpose of the Bankruptcy Code." See In re Canning, 706 F.3d 64 at 69; see Pratt v. Gen. Motors Acceptance Corp., (In re Pratt), 462 F.3d 14, 17-18 (1st Cir. 2006). As stated above, the Court may enforce the discharge injunction and redress violations pursuant to its "statutory contempt powers" under 11 U.S.C. § 105(a).

1. Yes, Taggert Applies. Yes, You Are Still Not Objectively Reasonable

BSB admits to notice of Plaintiff's bankruptcy discharge. See ¶ 4 of BSB's Motion to Dismiss. BSB likewise admits that they sent Plaintiff statements demanding sums to be paid for "past due amounts". See ¶ 5 of BSB's Motion to Dismiss. BSB admits that these statements "mirrored BSB's regular monthly mortgage statements sent to Debtor prepetition", which is simply a tapdancing way to admit that for ten (10) months BSB's demands for past due amounts did not contain typical bankruptcy disclaimers. See ¶ 5 of BSB's Motion to Dismiss. This is not at all to suggest that any such language or boilerplate disclaimer does or should absolve an abusive creditor of liability, as "[d]isclaimers of intent to violate bankruptcy protections are a common method by which debt collectors attempt to limit their liability to individual debtors. See, e.g., In re Vanamann, 561 B.R. 106 (Bankr. D.Nev. 2016) (inclusions of disclaimers in letters, notices, mortgage statements and informational statements insufficient to avoid sanctions). These admissions by BSB are in sharp contrast to their position merely

2

three months ago when they stated unequivocally that "BSB included in its mortgage statements to Debtor a conspicuous statement acknowledging Debtor's bankruptcy and discharge, and alerting him that this is not an attempt to collect." See ¶ 7 of Bangor Savings Bank's Objection to Debtor's Motion to Reopen Chapter 7 Bankruptcy Case, [Docket No. 35, Case #17-11833]. Furthermore, BSB concedes that they demanded payment for past due amounts every single month from December 2017 through September 2018. See Motion to Dismiss, ¶ 5. However, a closer inspection reveals that Plaintiff was sent the same statement demanding payment for past due amounts in October 2018 as well.

BSB both misstates and misapplies the holding in the matter of <u>Taggart v. Lorenzen</u>, 139 S. Ct. 1795, 1799 (2019) to meet its own ends. First, it is clear that BSB violated the discharge order because BSB was noticed of the bankruptcy case, the discharge was ordered, and BSB demanded from Plaintiff the payment of prepetition sums. In contrast to BSB's view <u>Taggart</u> does not preclude a finding of a discharge order violation – that has already been proven. <u>Taggart</u> applies to the finding of civil contempt against a creditor like BSB once the violation of the discharge order has been established.

In this case, BSB states two basis why sending statements to Plaintiff demanding payment for past due amounts over a period of ten (10) months is objectively reasonable, and therefore not arising to a finding of civil contempt under <u>Taggart</u>. First, is that "Monthly Mortgage Statements do not violate the Discharge Order because they do not rise to the level of coercive, harassing, or threatening. See Motion to Dismiss, ¶ 10. It is difficult to imagine how a payment demand for sums which even now have not been substantiated (the $13,097.10 in attorney's fees) next to the words "Past Due Amount" cannot be considered coercive, harassing, or threatening. The Court should be mindful that BSB demanded the "past due amount" every month for ten (10) months and the amount itself continues to grow. The Court may appreciate that Plaintiff is an unsophisticated individual and it is reasonable to consider a different standard for those who do not have the understanding of terms of law and finance that are commonplace with courts and attorneys. It is objectively reasonable that an unsophisticated individual would feel coerced and harassed at the prospect of having to pay $13,097.10 with no notice

and no accounting, and for a debt that he (rightfully) thought was discharged. Furthermore, since those charges appeared on a mortgage statement sent from the Plaintiff's mortgage company it is objectively reasonable for an individual to think that if they did not immediately pay those sums that the bank would then foreclosure on their home.

As stated by BSB in their Motion to Dismiss, the language of BSB's payment demands has changed several times since the Plaintiff filed for chapter 7 bankruptcy. See Motion To Dismiss, ¶ 5. Specifically, it is undisputed that the demands sent by BSB to Plaintiff from December 2017 through September 2018 (but really, October 2018) contained no "limiting language" about Debtor's personal liability after discharge, yet that "limiting language" suddenly appears in November 2018 and continues through the present. This change in "approach" from BSB contradicts BSB's stance that their monthly mortgage statements are not objectively coercive and harassing because if they were *not* objectively coercive and harassing there would be no reason for BSB to make a change and add the "limiting language" at all.

It is also worth noting that BSB states that Plaintiff went to a BSB branch in July 2017 "and made inquiries that indicated he may want to reaffirm his debt with BSB". See Motion to Dismiss, ¶ 2. BSB provides no further details as to the substance of Plaintiff's visit to BSB but it is objectively reasonable to conclude that a person in a state of desperation would feel the need to physically go to opposing party to discuss his situation face-to-face and get a straight answer. Three months after the visit Plaintiff signed a reaffirmation agreement that is clearly not in his best interest (his income at the time was (negative) $2,009.00). It is not much of a stretch to conclude that BSB coerced and harassed Plaintiff into signing the reaffirmation agreement because there is no logical reason why Plaintiff would do so considering his monthly income was (negative) $2,009.00 per month. Lastly, BSB clearly has some sort of problem or "beef" (if you will) with Plaintiff on a personal level. BSB refers to Plaintiff as

4

"recalcitrant", which generally means "obstinately defiant of authority or restraint"[1]. See "Response to your Letter regarding Brian Magras", attached as <u>Exhibit N</u> to Verified Complaint [Docket No. 1-1, Page 102 of 107].

It may be difficult to imagine how BSB could hold Plaintiff (their client) in such personal contempt, but it is not at all difficult to imagine that BSB's contempt for Plaintiff is their motivation to harass him at every opportunity.

2. <u>Unsafe Harbor</u>

BSB's second theory as to why sending statements to Plaintiff demanding payment for past due amounts over a period of ten (10) months is objectively reasonable, and therefore not arising to a finding of civil contempt, is that BSB is protected by the "safe harbor" contained in 11 U.S.C. § 524(j). See Motion to Dismiss, ¶ 13. Plaintiff does not dispute the first prong of § 524(j), specifically, whether BSB retains a security interest in real property that is Plaintiff's principal residence. See 11 U.S.C. § 524(j)(1). However, Plaintiff strongly disputes that BSB's demands of "past due amounts" are in any way an "act…in the ordinary course of business between the creditor and the debtor". See 11 U.S.C. § 524(j)(2). Amazingly, BSB's authority on this point stands for the exact opposite position that BSB says it does. In <u>In re Ladebush</u>, the plaintiff/homeowners were sent two account statements (the first on January 28, 2013, the second on February 25, 2013) (herein the "2013 Statements") from their mortgage servicer. See <u>In re Ladebush</u>, AP 13-1154-JMD, 2016 WL 675580, at *11 (Bankr. D.N.H. Feb. 18, 2016). These two statements demanded payment and did not contain any bankruptcy disclaimer. <u>Id</u>. The court noted very specifically that "[t]he 2013 Statements…unequivocally demand payment without any bankruptcy disclaimer, placing them *outside the safe harbor* of 11 U.S.C. § 524(j)(1)." <u>Id</u> at 19 [emphasis supplied]. In the present case BSB's contained no disclaimers for ten (10) months and therefore, like in <u>In re Ladebush</u>, are outside the safe harbor provisions of 11 U.S.C. §

---

[1] https://www.merriam-webster.com/dictionary/recalcitrant

5

524(j)(1). BSB's demands for payment are far more egregious than that of the mortgage servicer in Ladebush, specifically, that BSB sent payment demands every month for ten (10) months (whereas in Ladebush there were only two (2) demands), and that the funds demanded by BSB were not for periodic mortgage payments, within the meaning of 11 U.S.C. § 524(j)(3). Furthermore, while BSB suggests that the language "total amount due" on Plaintiff's mortgage statement does not *not* mean that BSB was "seeking or obtaining periodic mortgage payments" within the meaning of 11 U.S.C. § 524(j)(3), BSB fails to account for the language demanding "past due amounts" for $13,079.10 that were not noticed to Plaintiff and are still unaccounted for.

    3.   The Automatic Stay

The Verified Complaint plausibly asserts that there have been violations of the "automatic stay" under § 362 of the Bankruptcy Code. These violations arise out of the Defendant sending Plaintiff post-petition statements demanding immediate payment for unjustified and unaccounted for sums when Plaintiff's underlying personal obligation to make payment was discharged in bankruptcy. Admittedly, BSB may have charged Plaintiff's account for the same unjustified and unaccounted for sums post-petition but post-discharge. But, without discovery, which Plaintiff is anxious to propound upon BSB, it is impossible to know what exactly BSB charged Plaintiff for, and when. Since BSB is emphatically arguing that it did nothing wrong, they should be happy to provide all relevant discovery requested.

    4.   Contempt and Damages

As stated above, BSB has admitted to receiving notice of the chapter 7 bankruptcy case and has admitted to sending demands for payment to Plaintiff post-discharge. Furthermore, despite BSB's insisting that they are allowed by the mortgage to charge Plaintiff over $13,079.10 in attorney's fees - they are not. They may be allowed to charge to protect their own interest in Plaintiff's home but those amounts must be reasonable. Furthermore, the charges are still unaccounted for and were not necessary for BSB to protect its interest in Plaintiff's home. Rather than insisting upon a reaffirmation agreement (an agreement that BSB should have known the Court would deny even if they convinced Plaintiff to

6

agree because Plaintiff's income was (negative) $2,009.00 per month), BSB could have foreclosed. Instead, BSB wrote itself a blank check (it is currently $13,079.10 and climbing). The mortgage clearly does not authorize BSB to charge those funds to Plaintiff and it is one example of coercive debt collection practices that the bankruptcy code seeks to prohibit.

      WHEREFORE, Plaintiff respectfully requests that the Court deny the Motion to Dismiss in its entirety.

                                               /s/ Jacob T. Simon
                                               Jacob T. Simon, Esq.
                                               ATTORNEY FOR BRIAN J. MAGRAS
                                               BBO #673613
                                               Simon Law
                                               450B Paradise Road #423
                                               Swampscott, MA 01907
                                               (617) 819-4183 (p)
                                               jacob@simonlawma.com

Date: June 23, 2020

7

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 23, 2020, I caused to be served the above document to be filed and served via this Court's CM/ECF system on the following:

 /s/  *Jacob T. Simon*
Jacob T. Simon, Esq.

**ELECTRONIC MAIL**

Assistant U.S. Trustee
John Fitzgerald
USTPRegion01.BO.ECF@USDOJ.GOV

Chapter 7 Trustee
Stewart F. Grossman
stewart.grossman@arentfox.com

Shawn K. Doil
sdoil@eatonpeabody.com

**U.S. MAIL**

Brian J. Magras
116 Blue Road
Monmouth, ME 04259